**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

PDFFILLER, INC.,

                 Plaintiff,

    v.

CRYSTAL LAKE MEDIA, LLC D/B/A
PDFRUN,

                 Defendants.

C.A. No. _____

JURY TRIAL DEMANDED

## COMPLAINT

Plaintiff PDFfiller, Inc. ("Plaintiff") hereby alleges as follows:

## INTRODUCTION

1.      This action involves claims of the willful, unauthorized, and unlawful copying by Defendant Crystal Lake Media, LLC d/b/a PDFRun ("Defendant") of the form and content of Plaintiff's Website, with the intent to confuse consumers and divert business from Plaintiff to Defendant.  Since 2008, Plaintiff has invested substantial resources into designing its world-renowned document management and editing platform, hosted at www.pdffiller.com ("Plaintiff's Website").  Defendant has knowingly copied protected elements of Plaintiff's Website in disregard of Plaintiff's intellectual property rights.

## THE PARTIES

2.      Plaintiff PDFfiller, Inc. is a Massachusetts corporation with its principal place of business located at 167 Corey Road, #206, Brighton, MA 02135.

3.      Plaintiff conducts business through its web address: www.pdffiller.com.

4.      On information and belief, Defendant Crystal Lake Media, LLC d/b/a PDFRun is a Delaware corporate entity with its principal place of business at 16192 Coastal Highway, Lewes, Delaware 19958.

5.      On information and belief, Defendant conducts business through its web address:

EAST\135168175.1
397058-000004

www.pdfrun.com.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over the subject matter of this action pursuant to 28

U.S.C. §§ 1331 and 1338(a) and (b), and this Court's supplemental jurisdiction under 28 U.S.C.

§ 1367.

7.      This Court has personal jurisdiction over Defendant on the grounds that

Defendant resides in this District and/or conducts substantial business activities in this District.

8.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(1) and/or (2)

because Defendant resides within this District and/or a substantial part of the events giving rise

to the claims occurred within this District.

## GENERAL ALLEGATIONS

### Plaintiff PDFfiller

9.      Plaintiff is the provider of the web's most powerful document management and

editing platform.  Plaintiff owns and operates the following website to promote its platform:

www.pdffiller.com.

10.     Plaintiff's Website provides a comprehensive online document management and

editing platform that provides the services of an online editor, cloud storage platform, and a

signature request manager in one unique platform.

11.     Plaintiff's Website allows consumers to fill and send any PDF form online

seamlessly.  Through Plaintiff's Website, consumers can search for, edit, type on, write on, e-

sign, and annotate any form in a variety of formats.  Plaintiff's Website allows businesses and

consumers to streamline document management, achieve paperless workflow, and free up time,

energy, and resources.

12.     Plaintiff designed its website to be aesthetically pleasing to the consumer, by

allowing for a sleek and refined graphical user interface.

13.     Plaintiff has invested substantial resources in developing, refining, and optimizing

Plaintiff's Website since Plaintiff's inception in 2008.  Because Plaintiff's business is based on

- 2 -

Plaintiff's Website, Plaintiff expends significant time, effort, and resources to create a distinct, novel, and valuable website to attract and retain customers and potential customers.

14.     Today, more than two million users access Plaintiff's Website each year, with more than 20,000 forms filled per day.  Plaintiff provides its services to over 120,000 businesses around the world in almost every industry.

<u>**Plaintiff PDFfiller's Trade Dress**</u>

15.     Plaintiff has designed, developed, and is the owner of a unique trade dress for Plaintiff's Website, a world-renowned online document management and editing platform.

16.     Plaintiff owns protectable trade dress comprising the distinctive "look and feel" of Plaintiff's Website (hereinafter referred to as "Plaintiff's Trade Dress").  Plaintiff's Trade Dress serves to identify Plaintiff as the source of its services.

17.     The distinct and non-functional features of Plaintiff's Trade Dress include the following features available on Plaintiff's Website, including the following features available on construction pages for creating and filling out forms on Plaintiff's Website:

   i.   a gray-white color scheme;

   ii.  a rectangular main frame for viewing the form;

   iii. a trademark and/or company logo in the upper-left-hand corner in a rectangular frame;

   iv.  a "preview" of the form on the left-side of the main frame highlighted in the color orange running vertically down the page;

   v.   square icons in various shades of color displaying text in black lettering entitled "Text," "Number," and "Checkbox" that change to a shade of gray when a user clicks over the icon with each square icon including a:  (1) symbol representing the icon, and (2) a visual cursor modification in the shape of the symbol on the icon after a user clicks on the icon;

   vi.  an orange icon with white text entitled "DONE" in the upper right-hand corner; and

vii.   the particularized combination of all of these elements and features.

18.     The construction pages for filling out specific forms such as tax forms include the same features, except the icons in various shades of color that display text in black lettering entitled Text," "Number," and "Checkbox" change their shade when a user clicks over the icon that appears on the top of the user's frame.

19.     Plaintiff's Trade Dress is non-functional.  Specifically, the choice of the graphics, color, content, and presentation of features on the construction pages is not set forth in a manner designed to achieve a particular utility, but, rather, provides an aesthetic design distinctive to Plaintiff.  It provides for a sleek and defined "look and feel" that is aesthetically pleasing to consumers.

20.     Plaintiff's Trade Dress is inherently distinctive and has acquired secondary meaning.  Plaintiff's Website on which the Trade Dress is displayed averages approximately 240,000 unique visitors per month and receives well over 2 million unique visitors each year.

21.     Moreover, Plaintiff's Trade Dress possesses significant brand recognition and awareness among the general public as a result of Plaintiff's advertising efforts.  Such efforts include, but are not limited to, over 4500 positive ratings on "Shopper Approved."  Plaintiff has also received substantial positive media attention, including, but not limited to, references on CIO Review, Business Wire, and Computer Business Week.

22.     As a result of these, among other facts, a substantial segment of the consuming public associates Plaintiff's Trade Dress with Plaintiff.

**Defendant's Copying of Plaintiff's Website**

23.     Defendant operates a website at www.pdfrun.com (the "Infringing Website")  that directly competes with Plaintiffs' Website .  Upon information and belief, Defendant has owned and operated this website since at least April 2015.

24.     Defendant, through the Infringing Website, provides an online PDF editor platform that allows for editing, typing, and annotation of PDF documents, and therefore, offers services that directly compete with the services Plaintiff offers through Plaintiff's Website.

- 4 -

25.     The Infringing Website has the same overall look and feel as the website design that Plaintiff has used to promote its platform since 2008 and misappropriates Plaintiff's Trade Dress.

26.     The Infringing Website copies the visual and graphical elements of Plaintiff's Website and combines these elements in such a way that the Infringing Website has the same overall look and feel as Plaintiff's Website.

27.     Defendant has also misappropriated proprietary content from Plaintiff's Website. The Infringing Website copies Plaintiff's Website in several respects, including the format, layout, style, features, and textual content of Plaintiff's Website.  For example:

    a.    The Infringing Website has nearly identical construction pages for creating PDF forms.  It has an identical "preview" feature with an orange frame depicted on the left-hand side of the page, and strikingly similar icons in the same square shape in shades of gray, and in the same order from left to right ("Text," "Number," "Checkbox," etc.)

- 5 -

b.   A representative example of the construction pages for a blank form on Plaintiff's Website (left image) and the Infringing Website (right image) is shown below:



EAST\135168175.1
397058-000004

c.   A representative example of the construction pages of a sample W-9 form on

Plaintiff's Website (left image) and the Infringing Website (right image) follows:



d.   A representative example of the construction pages of a sample 1089 form on Plaintiff's Website (left image) and the Infringing Website (right image) is set out below:



28.   The Infringing Website copies several aspects of Plaintiff's Website on its construction pages, such as square icons on the top of the frame, a trademark/company logo on the upper left-hand of the page, a "preview" feature with an orange frame on the left side of the page, and an orange "DONE" icon on the upper right-hand of the page.

29.   Other features have also been copied from Plaintiff's Website on the Infringing Website.  For example, Defendant has copied from Plaintiff's Website:

EAST\135168175.1
397058-000004

a. The help video from Plaintiff's Website, featuring the same speaker and content:



b. The Privacy Policy from Plaintiff's Website;



    c.   Various pricing pages from Plaintiff's Website; and

    d.   The Terms of Service from Plaintiff's Website.



30.       Further, Defendant has engaged in strategic efforts to divert consumers from Plaintiff's Website to the Infringing Website by obtaining web addresses ("URLs") that mask the true source of the URL.  For example, Defendant, on information and belief, has obtained the URL http://w9-form-us.   Once the consumer accesses the URL, they are taken to a construction page on the Infringing Website that directly infringes Plaintiff's Trade Dress.  This diverts business from Plaintiff's Website because consumers are deceived into believing they are accessing an official government form.  Moreover, given the visual similarities between the Infringing Website and Plaintiff's Website, consumers could also be deceived into believing they have accessed Plaintiff's Website and/or that Plaintiff is the source of, or otherwise affiliated with, the Infringing Website.

**<u>Defendant's Failure to Cease its Infringing Activities</u>**

31.       On or about September 8, 2016, Plaintiff, through its counsel, sent Defendant a

- 11 -

cease-and-desist letter demanding that Defendant remove Plaintiff's proprietary content and alleging a violation of Plaintiff's Trade Dress.

32.     Defendant did not provide any written response to Plaintiff's cease-and-desist letter.

33.     Defendant continues to misappropriate Plaintiff's Trade Dress. Defendant has copied the Trade Dress with an intent to misappropriate Plaintiff's goodwill and customer base and to free ride on Plaintiff's significant investment of time, money, and resources in Plaintiff's Trade Dress and Plaintiff's Website.

## FIRST CLAIM

### (Trade Dress Infringement)

34.     Plaintiff hereby incorporates the allegations set forth in paragraphs 1 through 33 above, as though fully set forth herein.

35.     Plaintiff's Trade Dress, in particular, the overall look and feel of Plaintiff's Website, is arbitrary and non-functional, and has become identified in the market as originating with Plaintiff.  Thus, for example, the construction pages for creating and filling out forms on Plaintiff's Website include:

a. a gray-white color scheme;

b. a rectangular main frame for viewing the form;

c. a trademark and/or company logo in the upper-left-hand corner in a rectangular frame;

d.  a "preview" of the form on the left-side of the main frame highlighted in the color orange running vertically down the page;

e. square icons in various shades of color displaying text in black lettering entitled "Text," "Number," and "Checkbox" that change to a shade of gray when a user clicks over the icon with: (1) symbols representing each icon, and (2) a visual cursor modification in the shape of the symbol on the icon after a user clicks on the icon; and

- 12 -

f.   an orange icon with white text entitled "DONE" in the upper right-hand corner.

36.   It is the unique combination of these elements as used on Plaintiff's Website (as opposed to any of the individual elements) that creates Plaintiff's Trade Dress.  The overall visual impression of the combination and arrangement of these elements is aesthetic, and not functional, as these elements are designed to provide for a sleek and refined user interface for the consumer.

37.   As a result of Plaintiff's sales and advertising efforts, Plaintiff's Trade Dress has developed and now has a secondary and distinctive trade dress meaning to potential consumers. Plaintiff continuously utilized a website with its trade dress since 2008 and has extensively advertised its trade dress to consumers.  Plaintiff is informed and believes, and thereon alleges, that a substantial segment of the relevant public recognizes Plaintiff's Trade Dress as coming from and/or associated with Plaintiff.

38.   The Infringing Website incorporates Plaintiff's Trade Dress and/or a trade dress that is confusingly similar to Plaintiff's Trade Dress.  These confusingly similar aspects include, without limitation, the overall "look and feel" of the Infringing Website, which is presented in a style and manner so as to be confusingly similar to Plaintiff's Trade Dress.

39.   On information and belief, Plaintiff alleges that Defendant intentionally copied Plaintiff's Trade Dress in an effort to usurp the goodwill that Plaintiff has built up with consumers through continuous and extensive use of its trade dress.  More specifically, along with Plaintiff's Trade Dress, Defendant has copied and/or misappropriated Plaintiff's help videos, pricing pages, Privacy Policies, and Terms of Service *verbatim*, which has misled customers to believe that the Infringing Website originates from, or is sponsored or endorsed by, Plaintiff.

40.   Defendant is not now, and never has been, authorized by Plaintiff to use Plaintiff's Trade Dress or any confusingly similar trade dress.

41.   Defendant's use of Plaintiff's Trade Dress is likely to cause confusion, mistake, and/or deception among consumers as to whether Plaintiff endorses, is affiliated with, or is the same as Defendant and its services.

- 13 -

42.     As a proximate result of the unfair advantage accruing to Defendant's business from deceptively trading on Plaintiff's advertising, sales, and consumer recognition, Defendant stands to make substantial sales and profits in an amount to be established at trial.

43.     As a proximate result of the unfair advantage accruing to Defendant's business from deceptively trading on Plaintiff's advertising, sales, and consumer recognition, Plaintiff has been damaged and deprived of substantial sales of its services and has been deprived of the value of its trade dress as a commercial asset, in an amount to be established at trial.

44.     Unless restrained by the Court, Defendant will continue to infringe Plaintiff's Trade Dress.  In the absence of injunctive relief, consumers are likely to continue to be mistaken or deceived as to the true source, origin, sponsorship, and/or affiliation of Defendant.

45.     Plaintiff is informed and believes and thereon alleges that Defendant's acts were committed, and continue to be committed, with actual notice of Plaintiff's exclusive rights and with an intent to cause confusion, to cause mistake, and/or to deceive, and to cause injury to the reputation and goodwill associated with Plaintiff and its services. Pursuant to 15 U.S.C. § 1117, Plaintiff is, therefore, entitled to recover three times its actual damages or three times Defendant's profits, whichever is greater, together with Plaintiff's attorneys' fees.

## SECOND CLAIM

### (Federal Unfair Competition)

46.     Plaintiff incorporates by reference paragraphs 1 through 45 above, as though fully set forth herein.

47.     Plaintiff has common law and federal trademark rights in Plaintiff's Trade Dress, which is uniquely associated with Plaintiff.

48.     Defendant's misappropriation of Plaintiff's Website is likely to cause confusion or mistake with Plaintiff's Trade Dress, or to deceive as to the source, affiliation, connection, association, or sponsorship of Defendant with Plaintiff, in violation of the Lanham Act, 15 U.S.C. § 1125(a).

49.     Defendant's actions as alleged herein constitute unfair competition and Plaintiff

- 14 -

has been, and will continue to be, damaged by Defendant's acts in an amount to be determined at trial.

50.     Upon information and belief, Defendant's conduct is willful, deliberate, intentional, and in bad faith.

51.     Defendant's acts of unfair competition have caused, and will continue to cause, irreparable harm to Plaintiff and to the goodwill associated with Plaintiff's Trade Dress, for which Plaintiff has no adequate remedy at law.  Thus, Plaintiff is entitled to injunctive and other relief.

## THIRD CLAIM

### (Deceptive Trade Practices under Delaware State Law)

52.     Plaintiff incorporates by reference paragraphs 1 through 51 above, as though fully set forth herein.

53.     At all times relevant to this Complaint, and on information and belief, Defendant was engaged in trade or commerce in the state of Delaware.

54.     Plaintiff is knowingly making and/or has made a false representation as to the source, sponsorship, approval, or certification of goods through its unauthorized use of Plaintiff's Trade Dress in connection with the Infringing Website.

55.     Defendant is using Plaintiff's Trade Dress in connection with the Infringing Website without authorization from Plaintiff.

56.     The public and relevant consumers associate the Trade Dress with Plaintiff and Plaintiff's Website.

57.     Plaintiff has expended significant resources in the development, promotion, and protection of Plaintiff's Trade Dress.

58.     Defendant's unauthorized use of Plaintiff's Trade Dress sends false signals to the general public that Plaintiff has approved the Infringing Website, which it has not.

59.     Such acts occur in the course of Defendant's business and constitute deceptive trade practices in violation of 6 Del. C. § 2531, *et seq.*

- 15 -

60.     Defendant's unauthorized use of Plaintiff's Trade Dress has caused a likelihood of confusion or misunderstanding as to the source, sponsorship, approval, and/or certification of the Infringing Website and/or Defendant's affiliation, connection, and association with or certification by Plaintiff, and constitutes deceptive trade practices in violation of 6 Del. C. § 2531, *et seq*.

61.     Defendant's deceptive trade practices have had and will continue to have a negative impact on the public, as actual and potential customers of Plaintiff are likely to be confused or deceived by Defendant's unauthorized use of Plaintiff's Trade Dress.

62.     Defendant's conduct is willful, deliberate, intentional, in bad faith, and Defendant has acted with willful and deliberate intent to trade on Plaintiff's reputation and benefit from the extensive goodwill associated therewith.

63.     Defendant has engaged in unlawful and unfair business practices that have harmed and will continue to harm the goodwill associated with Plaintiff's Trade Dress and Plaintiff's business reputation.

64.     Plaintiff has been, and will continue to be, damaged by Defendant's deceptive trade practices in an amount to be determined at trial, as recoverable under 6 Del. C. § 2531, *et seq.*, including treble damages under 6 Del. C. § 2533.

65.     Defendant's acts in violation of 6 Del. C. § 2531, *et seq*., have directly and indirectly caused and will continue to cause irreparable harm to Plaintiff and to the goodwill and reputation associated with Plaintiff's Trade Dress, for which Plaintiff has no adequate remedy at law.  Thus, Plaintiff is entitled to injunctive and other relief.

## FOURTH CLAIM

### (Unfair Competition under Delaware Common Law)

66.     Plaintiff incorporates by reference paragraphs 1 through 65 above, as though fully set forth herein.

67.     Plaintiff has common law rights in Plaintiff's Trade Dress, which are uniquely associated with Plaintiff as the source of Plaintiff's Website in connection with Plaintiff's Trade

Dress.

68.     Plaintiff has expended significant resources in the development, promotion, and protection of the Trade Dress.

69.     Defendant is currently using Plaintiff's Trade Dress in commerce in connection with, *inter alia*, the promotion and sale of the Infringing Website without authorization from Plaintiff.

70.     Plaintiff has not authorized, and objects to, Defendant's current use of Plaintiff's Trade Dress.

71.     Defendant's unauthorized use of Plaintiff's Trade Dress has caused a likelihood of confusion or misunderstanding as to the source, sponsorship, approval, and/or certification of the Infringing Website and/or Defendant's affiliation, connection, and association with or certification by Plaintiff, in violation of the common law of unfair competition in Delaware.

72.     Defendant's unauthorized use of Plaintiff's Trade Dress falsely signals to the general public that Plaintiff has approved the Infringing Website, which it has not.

73.     Plaintiff has been, and will continue to be, damaged by Defendant's infringement and acts of unfair competition in an amount to be determined at trial.

74.     Defendant's conduct is willful, deliberate, intentional, and in bad faith.

75.     Defendant's acts of unfair competition have directly and indirectly caused, and will continue to cause immediate and irreparable harm and injury to Plaintiff, and to the goodwill associated with Plaintiff's Trade Dress, for which Plaintiff has no adequate remedy at law. Plaintiff is therefore entitled to injunctive and other relief.

EAST\135168175.1
397058-000004

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and relief against Defendants and respectfully requests that this Court:

1.       Find that the Defendant has engaged in trade dress infringement, unfair competition in violation of 15 U.S.C. § 1125(a), and deceptive trade practices in violation of 6 Del. C. § 2531, *et seq.*;

2.       Find that the Defendant has willfully infringed Plaintiff's Trade Dress, with full knowledge of Plaintiff's use of and rights in the Trade Dress;

3.       Find that the Defendant has otherwise injured the business reputation and business of Plaintiff by Defendant's acts and conduct as set forth in this Complaint;

4.       Enter judgment for Plaintiff on all Counts of the Complaint;

5.       Issue injunctive relief against Defendant, and require that Defendant, its agents and representatives, be enjoined and restrained from copying, posting, or making any other infringing use or distribution of any of Plaintiff's protected materials;

6.       Order Defendant to pay Plaintiff both the costs of this action and the reasonable attorneys' fees incurred in prosecuting this action; and

7.       Grant Plaintiff such other and additional relief as is just and proper, including, but not limited to, treble damages pursuant to 6 Del. C. § 2533.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

EAST\135168175.1
397058-000004

Dated:  October 19, 2016

Respectfully submitted,

*/s/ Denise S. Kraft*
Denise S. Kraft (DE No. 2778)
Brian A. Biggs (DE No. 5591)
**DLA PIPER LLP (US)**
1201 North Market Street, Suite 2100
Wilmington, DE  19801-1147
Telephone:     (302) 468-5700
Facsimile:      (302) 394-2341
denise.kraft@dlapiper.com
brian.biggs@dlapiper.com

Michael G. Strapp
**DLA PIPER LLP (US)**
33 Arch Street, 26th Floor
Boston, MA 02110-1447
Telephone: 617.406.6031
Facsimile:  617.406.6100
michael.strapp@dlapiper.com

EAST\135168175.1
397058-000004