

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984 6000
www.potteranderson.com

**Bindu A. Palapura**
Partner
Attorney at Law
bpalapura@potteranderson.com
302 984-6092 Direct Phone
302 658-1192 Firm Fax

January 17, 2018

**VIA ELECTRONIC FILING**

The Honorable Richard G. Andrews
U.S. District Court for the District of Delaware
J. Caleb Boggs Federal Building
844 North King Street
Wilmington, DE 19801

      Re:    *PDFfiller, Inc. v. Crystal Lake Media, LLC d/b/a PDFRun*
              C.A. No. 16-963-RGA

Dear Judge Andrews:

      Crystal Lake Media, LLC d/b/a PDFRun ("PDFRun") respectfully submits this letter in advance of the teleconference set for January 19, 2018 at 2:00 p.m. Despite hauling PDFRun into litigation, Plaintiff has repeatedly dragged its own feet in complying with its discovery obligations. Knowing well the practices and procedures of this Court, PDFRun complied with its obligations with the hopes that Plaintiff would follow suit. Unfortunately, that has not been the case, and PDFRun has no option but to seek relief from this Court.

      To date, Plaintiff has produced only 267 documents. More importantly, despite agreeing to do so, Plaintiff has failed to produce documents responsive to many of PDFRun's requests for production ("RFP") and refused to provide any explanation for these deficiencies. Ex. A. In order to ascertain the reasons for these startling gaps, PDFRun requested in early December that Plaintiff disclose its document collection and production procedures, including identification of what data sources were searched, the names of custodians whose records were searched, and if relevant documents were located using search terms and/or manual searching. Finally, last night at 9:30 p.m., Plaintiff provided some, but not all, of the requested information. As fact discovery closes on February 28, 2018, with depositions of Plaintiff's fact witnesses noticed to start on January 31, 2018, time is of the essence. Thus, PDFRun respectfully requests that the Court order Plaintiff to disclose the full list of custodians and the custodial and non-custodial data sources which were searched and further clarify its "manual search" procedure.

      1. ***Despite violating the Scheduling Order and producing 70% of its documents after the "substantial completion" deadline, Plaintiff's document production is still deficient.***

      The deadline to substantially complete document production was October 4, 2017. D.I. 19. As of that date, Plaintiff had only produced 80 documents in response to PDFRun's fifteen requests for production, the vast majority of which were either cumulative of images and exhibits already attached to Plaintiff's Second Amended Complaint ("SAC", D.I. 44), such as side-by-side comparisons of PDFRun's and Plaintiff's web pages, or screenshots of Plaintiff's website. The omissions in Plaintiff's production were glaring. For instance, despite representing in its

The Honorable Richard G. Andrews
January 17, 2018
Page 2

SAC that it had engaged in "significant beta testing for the aesthetic features of its website" and employed an "iterative design process" in choosing its "sleek and refined user interface," Plaintiff produced no documents concerning beta testing and no communications or documents concerning the development and design of its website. Such documents are responsive to PDFRun's RFP Nos. 3, 4, and 6. Further, despite specific document requests, Plaintiff has not produced a single communication that references PDFRun. In fact, at the October 4, 2017 deadline, PDFRun still had not produced a single piece of correspondence or communication to or from any employee or officer of Plaintiff, except for various transcripts from its customer help service.

On October 12, 2017, PDFRun sent a letter to Plaintiff's counsel specifically identifying these deficiencies. Ex. B. The parties met and conferred on October 26, 2017, and Plaintiff represented that it would be making a "final" production that would include documents responsive to PDFRun's RFPs. On November 3, 2017, Plaintiff produced an additional 154 documents. Of these, 50 documents were one-line customer reviews, one was a *CMS Critic* article, 25 documents were non-English communications between Plaintiff's developers, while the remainder were pages of computer code. Because Plaintiff clearly missed the mark in document production, yet again, on November 14, 2017, PDFRun sent a letter again reminding Plaintiff of its discovery obligations, and also requesting translations of the non-English documents because Plaintiff had relied on them in its interrogatory responses pursuant to Fed. R. Civ. P. 33(d). Ex. C. On November 17, 2017, Plaintiff produced an additional 27 documents, most of which were allegedly machine translations of the non-English documents from the previous production, bringing the total number of documents produced to 267.

2. ***Plaintiff refuses to comply with Delaware's Default Standard for Discovery.***

On December 4, 2017, the parties verbally conferred, yet again. Given the holes in its production and Plaintiff's representation that no additional documents would be produced, PDFRun requested that Plaintiff disclose its document collection process, consistent with Delaware's Default Standard for Discovery. Specifically, PDFRun asked what data sources were searched, names of custodians whose records were searched, and if relevant documents were located using search terms and/or manual searching. Further, if search terms were used, PDFRun asked that Plaintiff disclose them pursuant to the Local Rules. While PDFRun had already provided much of the requested information regarding its production to Plaintiff in various meet-and-confers, PDFRun nevertheless offered to exchange the requested information in the hopes of learning the information quickly. Unable to provide answers, Plaintiff's counsel stated he needed to confer with his team and client and promised to respond by Monday, December 11. Ex. D at pg. 8. Unfortunately, no response was forthcoming.

In the following weeks, the parties exchanged numerous emails on this issue, and it became abundantly clear that Plaintiff would not be complying with the default rules, and was instead engaged in a game of hide-the-ball. Ex. D at pgs. 1-6. For instance, on January 4, 2018, Plaintiff's counsel incorrectly claimed that PDFRun had not provided such information, when PDFRun had affirmatively agreed to a simultaneous exchange on December 6, 2017. Ex. D at pg. 6. Then on January 8, 2018, over one month after he promised to confer with his client, Plaintiff's counsel stated, "we are checking with Plaintiff regarding the possibility of a mutual exchange in writing on a preset date and time regarding the data sources searched by the parties. We will get back to you as soon as we have a chance to discuss with Plaintiff." Ex. D at pg. 2. Finally, on January 16, 2018 at 9:30 p.m., the night before this letter was due, PDFfiller sent an

The Honorable Richard G. Andrews
January 17, 2018
Page 3

email identifying two data sources and representing that they "manually searched" for responsive documents. Ex. E. PDFfiller refused to produce custodians "at this time." PDFfiller's gamesmanship needs to end. The delay in producing such basic information is inexcusable and raises major red flags concerning counsel's involvement, or lack thereof, in Plaintiff's document collection and production.

 3. *Given its wholly deficient document production, Plaintiff's full list of custodians and data sources must be disclosed and its "manual" search methodology be clarified.*

PDFRun respectfully requests that Plaintiff be compelled to comply with this Court's Default Standard on e-discovery that requires the parties to (1) disclose the "custodians most likely to have discoverable information," (2) "search . . . emails and other ESI maintained by the[se] custodians" and "[i]f the producing party elects to use search terms to locate potentially responsive ESI, it shall disclose the search terms to the requesting party." Default Standard at ¶¶ 3(a) and 5(b).

Plaintiff's eleventh-hour disclosure does not resolve this dispute. Plaintiff still refuses to identify its custodians, whether custodial data sources such as hard drives were searched, and which email domains, if any, were searched. The only two data sources (RedMine and Jira) disclosed appear to be non-custodial web-based project management systems. Plaintiff's limited production demonstrates that individuals working for Plaintiff do correspond at least by email and some unidentified workflow software. Thus, it is unclear if there are other sources of data, whether they were searched, how they were searched and whether responsive documents were withheld. Plaintiff also represented that it manually searched for information responsive to discovery requests. Ex. E. However, given the significant deficiencies in its production, PDFRun is unable to accept that representation without additional clarification. For instance, who did the manual searching –Plaintiff itself or Plaintiff's counsel? Plaintiff admits that "many of the original documents are in the Russian language." Ex. E. Is there someone on Plaintiff's legal team that understands Russian and is able to identify the relevant documents, or did the client handle selection?

Any argument by Plaintiff that the Default Standards do not apply is a red herring, as there is no limitation on the applicability of the standard. Moreover, the Court likely expects parties to exchange such information even without such rules in place, particularly in situations like this where there are apparent problems with Plaintiff's document production. The lengths to which Plaintiff has gone in refusing to provide such basic information is suspicious. Given the gaps in the current evidentiary record, PDFRun is concerned that Plaintiff may be intending to engage in deposition and expert discovery by ambush.

Plaintiff's improper conduct only furthers PDFRun's belief that Plaintiff initiated this litigation in order to drive a smaller competitor out of the market. PDFRun has spent significant time and financial resources to comply with its discovery obligations, with the hopes that Plaintiff would realize its claims were meritless and dismiss this lawsuit. Instead, Plaintiff has dragged its feet in discovery, forcing PDFRun to bring this discovery motion. PDFRun therefore respectfully requests that the Court also grant PDFRun its attorneys' fees associated with resolving this dispute.

        Respectfully,

        */s/ Bindu A. Palapura*

        Bindu A. Palapura

BAP:sjh/5602396/43710

Enclosures

cc:    Clerk of the Court (via hand delivery) (w/enc.)
        All Counsel of Records (via electronic mail) (w/enc.)